# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **TAMMY ABSTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | 3:16-cv-00037-AKK |
| **SEDGWICK CLAIMS** | ) | |
| **MANAGEMENT SERVICES, INC.,** | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Tammy Abston filed this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), challenging defendants' decision to deny her long term disability pension benefits. Presently before the court is defendants' motion for summary judgment, doc. 24, which is fully briefed, docs. 24-1; 33; 36, and ripe for review. For the reasons stated below, the motion is due to be granted.

### I.     STANDARD OF REVIEW

Rule 56's general principle that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" has limited application here, because the district court "sits more as an appellate tribunal than as a trial court" and "evaluates

the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir. 2002). To that end, the court is guided by the Eleventh Circuit's six-step sequential framework for reviewing ERISA benefit denials, which requires the following:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision was "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.
>
> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Williams v. Bellsouth Telecommunications, Inc.*, 373 F.3d 1132, 1138 (11th Cir. 2004), *overruled on other grounds* by *Doyle v. Liberty Life Assurance*, 542 F.3d 1352 (11th Cir. 2008). This court's review of the administrator's decision is

2

limited to "consideration of the material available to the administrator at the time it made its decision." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Moreover, the claimant has the burden of proving entitlement to ERISA benefits. *Glazer v. Reliance Std. Life Ins. Co.*, 524 F.3d 1241, 1248 (11th Cir. 2008).

## II. FACTUAL BACKGROUND

Abston worked for SunTrust Bank as an Area Manager 1 Branch Manager, a position in which she managed eleven branches and conducted annual and mid-year reviews. *See* doc. 24-7 at 21. At some point during her employment, Abston's treating physician, Dr. David McLain, diagnosed Abston with lupus, psoriasis, arthritis, and fibromyalgia. *See* doc. 24-9 at 31. Consequently, Abston applied for, and received, long term disability benefits beginning August 5, 2013. Doc. 24-4 at 18. The discontinuation of these benefits is the basis for this lawsuit.

SunTrust Long Term Disability ("LTD") coverage is part of the SunTrust Banks, Inc. Employee Benefit Plan ("the Plan"), which is governed by ERISA and provides financial assistance to eligible employees who are unable to work, as determined by the claims administrator, due to an illness or injury after 180 days. Doc. 24-3 at 6, 23. The Benefits Plan Committee has "delegated the ministerial and discretionary authority and control for the administration of LTD benefit claims and appeals" to Sedgwick Claims Management. *Id.* at 21.

The Plan states that "[m]edical review and approval is required for LTD benefits," and obligates the claimant to submit objective medical documentation on her own behalf in support of "total disability."[1] *Id.* at 7. The Plan provides a two-tier definition for "total disability" — that is, for the first twenty-four months, a claimant is disabled if she is "unable to perform each of the material duties of the occupation [she] regularly perform[s] for SunTrust," and is "under the regular care of a physician appropriate to [her] condition." *Id.* at 7–8. After twenty-four months, there is a change in definition ("CID"), which provides that the claimant is totally disabled if she is "unable to earn at least 60% of [her] pre-disability earnings while working in any occupation," "unable to perform each of the material duties of any occupation for which [she] is reasonably fitted by education, training, or experience," and "under the regular care of a physician appropriate to [her] condition." *Id.* at 8. Relevant here, the Plan also provides that the claims administrator may require claimants to apply for Social Security benefits, as the LTD benefit plan is designed to "supplement Social Security disability benefits," *id.* at 10, and that a claimant "may be determined to be disabled by the Social Security Administration and not meet the definition of Total Disability for the LTD

---

[1] *See* doc. 24-3 at 7 ("It is your responsibility to ensure that any requested medical information of your condition (objective medical documentation submitted by your physician) has been submitted including the restrictions and/or limitations precluding you from working in your own occupation on a full-time basis. The claims administrator will evaluate the medical documentation submitted on your behalf and determine if your condition meets the Plan's definition of Total Disability.").

benefits under the Plan," as "the LTD claims administrator determines [a claimant's] eligibility for LTD benefits based on the Plan definition," *id.* at 10–11.

After being approved for LTD benefits, the Social Security Administration also approved Abston for disability benefits beginning August 2013. *See* doc. 24-5 at 33. Consistent with the Plan, Sedgwick informed Abston that it would monitor her condition to determine whether she continued to meet the Plan's definition of total disability. Doc. 24-4 at 18. Initially, Sedgwick extended Abston's LTD benefits based on Dr. McLain's reports that Abston, in an eight hour day, could sit for twenty minutes at a time for four hours a day, stand and walk for twenty to thirty minutes for one hour per day, and occasionally lift/carry up to ten pounds, and that Abston suffered fatigue from lupus, weakness in both hands, joint pain in her jaw, and numbness in her right hand. *See id.* at 18, 32–36.

In accordance with the Plan, *see* doc. 24-11 at 15, three months prior to the CID date, Sedgwick initiated the investigation process to determine whether it should continue Abston's LTD benefits past the twenty-four month mark, *see* doc. 24-10 at 38. Consequently, Sedgwick requested a physician advisor review for rheumatology. Network Medical Review Co., Ltd., a third party independent medical review company, assigned Abston's claim to Dr. Rajendra K. Marwah, a board certified rheumatologist and internal medicine specialist. *See* doc. 24-8 at 29–34. After his retention, Dr. Marwah contacted Dr. McLain. However, Dr.

McLain refused to speak to Dr. Marwah, because he was "not being paid for service and could not waste any more time talking with [Dr. Marwah]." *Id.* at 29. Based on his review of Dr. McLain's records, Dr. Marwah concluded that Abston "has not had appropriate treatment,"[2] *id.* at 32, and that, while Abston suffers from fibromyalgia, rash, psoriasis, and psoriatic arthritis, Abston could perform her job or any similar job without restrictions or limitations as long as she receives "ongoing appropriate medical care and follow-up," *id.* at 29–30, 33. Based on Dr. Marwah's report, Sedgwick informed Abston that it planned to cease her LTD benefits because she did not qualify for further disability benefits under the Plan: specifically, "the medical information [did] not support restrictions, limitations, or impairments that would prevent [Abston] from performing the demands of [her] own occupation." Docs. 24-8 at 37; 24-9 at 1.

Abston appealed the denial. Doc. 24-9 at 5. To evaluate her appeal, Sedgwick referred Abston's claim to Dr. N. Nichole Barry, an independent physician advisor who also specialized in rheumatology. After reviewing the entire file, including Dr. McLain's treatment notes, the SunTrust Branch Manager job description, Dr. Marwah's report, Abston's appeal letter, and the Plan's

---

[2] For example, Dr. Marwah noted that Rituxan, which Dr. McLain prescribed, "is not indicated for the treatment of SLE, psoriasis, or psoriatic arthritis." Doc. 24-8 at 32. Moreover, Dr. McLain was treating Abston's psoriasis with Plaquenil and Quinacrine, which are "anti-malarial agents . . . known to aggravate psoriasis." *Id.* As to Abston's fibromyalgia, Dr. Marwah noted that Abston had not been treated with the "FDA approved drug Lyrica" and had not "been offered physical therapy, occupational therapy, or aquatic therapy." *Id.*

definition of disability, *see* doc. 24-9 at 30, and unsuccessfully attempting on four occasions to contact Dr. McLain for a peer-to-peer call, *see id.* at 31, Dr. Barry determined that Abston was "not unable to perform each of the material duties of the occupation she regularly performs as of 06/08/15 through return to work," *id.* at 35. Dr. Barry noted that, while Dr. McLain's July 17, 2015 office visit notes documented tenderness in multiple joints, Abston did not suffer from swelling, limited range of motion, or deformities. *Id.* Dr. Barry further noted that Abston's joint pain is non-inflammatory. *Id.* at 36. For these reasons, Dr. Barry concluded that "none of [Abston's] etiologies would prevent [her] from performing her job duties." *Id.* As a result, Sedgwick upheld its denial determination. *Id.* at 39.

### III. ANALYSIS

Defendants seek summary judgment on the basis that Sedgwick's denial decision was *de novo* correct or, alternatively, that reasonable grounds existed to deny Abston's claim. For the reasons stated below, the court agrees and will affirm the denial of benefits.

**A. Sedgwick's Decision was *De Novo* Correct**

In the first step of the analysis, the court must "review the administrator's decision de novo for correctness: based on the evidence before the administrator at the time it made its decision, the court evaluates whether it would have reached the same decision." *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 673 (11th Cir.

7

2014). The evidence here supports such a finding. Specifically, under the Plan, Abston is eligible for LTD benefits if, among other requirements, she is "unable to perform each of the material duties of any occupation for which [she] is reasonably fitted by education, training, or experience." Doc. 24-3 at 8. During the CID process, Sedgwick hired an independent reviewer, Dr. Marwah, to evaluate whether Abston met this standard. Based on Dr. Marwah's findings that Dr. McLain had not appropriately treated Abston's fibromyalgia or provided Abston an appropriate medication regimen, Sedgwick found that Abston had not sustained her burden of showing total disability, and decided to cease Abston's LTD benefits.

After Abston appealed, Sedgwick hired another consultant to review Abston's file. After reviewing the entire file and unsuccessfully attempting to contact Dr. McLain, Dr. Barry determined that, although Abston experienced "documented tenderness" in "multiple joints," Abston nonetheless experienced no "swelling, limited range of motion, nor any deformities." Doc. 24-9 at 35. She added also that Abston did not suffer from any "active or ongoing inflammation." *Id.* at 36. Significantly, like Dr. Marwah, Dr. Barry concluded that Abston could perform the Area Manager 1 Branch Manager position without any restrictions. *See* docs. 24-8 at 29–34; 24-9 at 36.

In opposing summary judgment, Abston asserts that Sedgwick failed to consider the entirety of her social security file and did not afford appropriate weight to the opinions of Dr. McLain. These contentions are unavailing, because the approval of Social Security benefits is not conclusive on whether a claimant is also disabled under the terms of an ERISA plan. *Whatley v. CNA Ins. Companies*, 189 F.3d 1310, 1314 n.8 (11th Cir. 1999).[3] Moreover, "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). *See also Ray v. Sun Life Health Ins. Co.*, 443 F. App'x 529, 533 (11th Cir. 2011) ("No special weight is to be accorded the opinion of a treating

---

[3] Abston asks the court to find that Sedgwick's claims process was "procedurally unfair" in light of the holding in *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663 (11th Cir. 2014), that the failure of the insurance company (that served both as the plan issuer and administrator) to consider the plaintiff's SSA file, required remand due to an incomplete record. *See* doc. 33 at 1. *Melech* is distinguishable in two significant regards. First, in *Melech*, the claims administrator denied the plaintiff's claim while her SSDI application was still pending before the SSA. *Id.* at 665. Here, Sedgwick approved Abston for LTD benefits, and the SSA approved Abston's SSDI claim, in August 2013. Second, in *Melech*, the claims administrator, Life Insurance of North America ("LINA") had a "financial stake in the outcome." *Id.* at 674. In this case, Sedgwick had no stake in the outcome, because the LTD benefit funds are paid out of a trust. *See* docs. 24-3 at 22; 24-12 at 26. *See also HCA Health Servs. of Ga., Inc. v. Emplrs. Health Ins. Co.*, 240 F.3d 982, 1001 (11th Cir. 2001) ("We find that EHI acted under a conflict of interest because EHI pays claims out of its own assets."); *Brown v. Blue Cross & Blue Shield*, 898 F.2d 1556, 1561–62 (11th Cir. 1990) ("[B]ecause an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business . . . [a] strong conflict of interest [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims . . . ."). For these reasons, the court is not persuaded by Abston's argument that remand is warranted.

physician" in ERISA cases.). For these reasons, the court finds that Sedgwick's decision to deny LTD benefits was *de novo* correct.

**B. Alternatively, Reasonable Grounds Existed to Deny Benefits.**

Under the multi-step ERISA framework, the court's inquiry ends after the court determines that an administrator's decision was correct. *See Blankenship*, 644 F.3d at 1355. However, alternatively, consistent with the analysis above, even if Sedgwick's decision was wrong (and this court finds that it was not), reasonable grounds exist in the record to support Sedgwick's decision. Additionally, the court finds that Sedgwick suffered under no conflict of interest. *See Gilley v. Monsanto Co.*, 490 F.3d 848, 856 (11th Cir. 2007) ("Our circuit law is clear that no conflict of interest exists where benefits are paid from a trust that is funded through periodic contributions so that the provider incurs no immediate expense as a result of paying benefits.").

## IV. CONCLUSION

Based on a review of the record, the court finds that Sedgwick's decision was *de novo* correct or, alternatively, reasonable, and is due to be affirmed. Accordingly, defendants' motion for summary judgment, doc. 24, is due to be granted. A separate order will be entered contemporaneously herewith.

**DONE** the 30th day of June, 2017.

                                                              **ABDUL K. KALLON**
                                      UNITED STATES DISTRICT JUDGE